UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD CUPP, an individual; LAWRENCE "WOLF" HAVEN, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> KAMALA D. HARRIS, et al., <br><br> Defendants. | No. 2:16-cv-00523-TLN-KJN <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS JESSE BRUCKER, SCOTT JONES, AND COUNTY OF SACRAMENTO'S MOTION TO DISMISS AND GRANTING THE MOTION TO SEVER** |

This matter is before the Court pursuant to Defendants Jesse Brucker ("Brucker"), Sacramento County Sheriff Scott Jones ("Jones"), and County of Sacramento's ("Sacramento County") (collectively, "Sacramento Defendants") Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") and Motion to Sever. (Mot. to Dismiss Second Am. Compl. and Sever, ECF No. 15.) Plaintiffs James Edward Cupp ("Cupp") and Lawrence Haven ("Haven") (collectively, "Plaintiffs") filed an opposition, (Opp'n to Mot. to Dismiss and Sever, ECF No. 24), and the Sacramento Defendants filed a reply, (Reply to Mot. to Dismiss and Sever, ECF No. 28). For the reasons set forth below, the Court hereby GRANTS IN PART and DENIES IN PART the Sacramento Defendants' Motion to Dismiss and GRANTS the Sacramento Defendants' Motion to Sever. (ECF No. 15.)

///

1

# I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this suit on March 11, 2016. (ECF No. 1.) On June 3, 2016, Plaintiffs filed a first amended complaint. (ECF No. 5.) On August 15, 2016, Plaintiffs filed the SAC against Kamala D. Harris, Attorney General of the State of California, in her official capacity only; City of Citrus Heights; Citrus Heights Police Department Chief Christopher W. Boyd, in both his individual and official capacity; Citrus Heights Police Officer Christian Baerresen, # 371; Citrus Heights Police Officer Thomas Lamb, # 315; Unknown Citrus Heights Police Officer Badge Number 323; Unknown Citrus Heights Police Officer who prepared Report Number CH14-02589 on 03/26/2014; Two unknown named peace officers of the Citrus Heights Police Department; County of Sacramento, Scott Jones, in his official capacity as Sheriff of County of Sacramento; Sacramento Deputy Sheriff Jesse Brucker, # 512; County of Placer; Edward N. Bonner, in his official capacity as Sheriff of County of Placer; Placer County Deputy Mason, # 181; and Placer County Deputy Hintze, # 101 for various causes of action resulting out of various alleged violations of Plaintiffs' Second, Fourth, Fifth, and Fourteenth Amendment rights. (ECF No. 12.)

Plaintiffs' SAC pleads various allegations relating to completely unrelated events and unrelated legal issues, united only by a common Defendant, Attorney General Kamala Harris. Plaintiffs are two unrelated individuals, James Edward Cupp and Lawrence "Wolf" Haven. Cupp is a resident of South Dakota who sometimes travels to California, including to visit his mother or friends. (ECF No. 12 ¶¶ 6, 22, 24.) Haven is a resident of Sacramento County. (ECF No. 12 ¶ 25.)

Plaintiffs frame their Second Amendment and Equal Protection Clause claims (the first and twelfth claims for relief) as a "constitutional challenge to the complex statutory scheme set forth in Cal. Penal Code §§ 25450-25475, 26150-26225, 26300-26325, 32000-32030 (Pen. Code, §§ 26950, 27650)" that allegedly results in a "massive transfer of gun rights from plaintiffs to active and honorably retired California peace officers" because current and former peace officers are exempted from some parts of California's firearms regulations. (ECF No. 12 ¶¶ 116, 273 (emphasis omitted).) Plaintiffs allege "this action seeks to put an end to government selecting who gets to exercise their rights under the Second Amendment." (ECF No. 12 ¶ 65.) Plaintiffs

2

thus request injunctive and declaratory relief which would grant them the same type of exemptions from California law as active or retired peace officers, including the ability to keep, bear, and travel with off-roster handguns, to possess, transport, and purchase standard size handgun and rifle magazines, to travel interstate with magazines that contain more than 10 rounds of ammunition, and to carry either a concealed weapon or openly carried weapon. (ECF No. 12 ¶¶ 117, 274.) Plaintiffs also request an "injunction to either be issued a lifetime CCW upon application at the same cost that retired officers pay or be permitted to carry a weapon openly." ECF No. 12 ¶¶ 118, 275.)

In addition to these broad challenges to California's firearms regulations, Plaintiffs purport to assert claims against the Attorney General and various law enforcement officers and agencies from the City of Citrus Heights, Sacramento County, and Placer County. These claims arise from three separate alleged incidents. First, Cupp alleges Citrus Heights police officers unlawfully arrested him on or about March 25, 2014, on a charge of carrying a concealed knife. (ECF No. 12 ¶¶ 139–141.) Cupp also sues about events occurring later that same day, claiming that officers searched his "temporary residence without a warrant" and illegally seized six firearms and two non-folding hunting knives owned by Cupp. (ECF No. 12 ¶¶ 139–141.) The case against Cupp was dismissed by the district attorney two months after his arrest, and Cupp's two knives were returned to him. (ECF No. 12 ¶¶ 143–144.) Second, Haven alleges a Placer County sheriff's deputy unlawfully arrested him on February 8, 2014, on a charge of illegally possessing a slungshot (a metal weight attached to a flexible handle for use as a weapon). (ECF No. 12 ¶¶ 222–230.) Third, Haven alleges that on February 14, 2016, a Sacramento County sheriff's deputy searched his residence without a warrant and without probable cause, and subsequently seized three of Haven's firearms. (ECF No. 12 ¶¶ 185–187.)

Both Haven and Cupp bring claims under the Second Amendment, Fourth Amendment, and Fifth Amendment related to each incident (the third through eleventh claims for relief). Local authorities have allegedly refused to return firearms that were seized from Plaintiffs because Plaintiffs have refused to complete the Law Enforcement Gun Release ("LEGR") application that is required by California Penal Code § 33850. (ECF No. 12 ¶¶ 124–128, 148–

3

149, 152, 189.)  This required form was allegedly created by Attorney General Harris in or

around January 2012.  (ECF No. 12 ¶ 149.)  Thus, Plaintiffs allege that the refusal to return their

firearms is "[a]t the direction of state law and [Harris]."  (ECF No. 12 ¶¶ 54, 189, 201, 210.)

Plaintiffs allege that the LEGR application violates the Second Amendment, the Fifth

Amendment right against self-incrimination, the Due Process Clause of the Fourteenth

Amendment, and the Equal Protection Clause of the Fourteenth Amendment.  (ECF No. 12

¶¶ 128, 148.)  Plaintiffs appear to seek injunctive relief that would require the return of their

firearms without completing the form or paying the fee required by the California Penal Code.

(ECF No. 12 ¶¶ 132, 163, 171.)

## II.    STANDARDS OF LAW

### A.    Motion to Dismiss

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

("Rule") 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732

(9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

(2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice

of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S.

544, 555 (2007).  "This simplified notice pleading standard relies on liberal discovery rules and

summary judgment motions to define disputed facts and issues and to dispose of unmeritorious

claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted

as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of

every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.

*Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not

allege "'specific facts' beyond those necessary to state his claim and the grounds showing

entitlement to relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. RingrosHee*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims . . . across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### B.     Motion to Sever

Rule 21 permits a court to "sever any claim against a party." Fed. R. Civ. P. 21.  A court has broad discretion in determining whether to sever claims under Rule 21.  *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1992).  "There is no established test in the Ninth Circuit for when a district court should exercise its broad discretion and sever a claim under Rule 21." *Arcure v. Cal. Dep't. of Developmental Servs.*, No. 1:13-cv-00541-LJO-BAM, 2014 U.S. Dist. LEXIS 11798, at *6 (E.D. Cal. Jan. 30, 2014).  "Claims may be severable under Rule 21 if they arise from different factual situations or pose different legal questions." *Khanna v. State Bar of Cal.*, No. C-07-2587 EMC, 2007 U.S. Dist. LEXIS 59945, at *2 (N.D. Cal. Aug. 7, 2007). Claims may also be severed "if it will serve the ends of justice and further the prompt and efficient disposition of litigation." *Id.*  "Fairness is a critical consideration in determining whether severance is appropriate," and therefore it must be determined whether any party would suffer prejudice.  *Pena v. McArthur*, 889 F. Supp. 403, 407 (E.D. Cal. 1994).  "As a general matter, Rule 21 severance creates two discrete, independent actions, which then proceed as separate suits for the purpose of finality and appealability." *Gaffney v. Riverboat Servs. of Ind.*, 451 F.3d 424, 441 (7th Cir. 2006).

In determining whether to sever a claim under Rule 21, a court may consider the following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *SEC v. Leslie*, No. 07-3444, 2010 U.S. Dist. LEXIS 76826, at *10 (N.D. Cal. July 29, 2010) (quoting *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999)).

///

///

6

**III.**   **ANALYSIS**

Plaintiff Haven brought three claims against the Sacramento Defendants (Claims Six, Seven, and Eight) for alleged Second, Fourth, and Fifth Amendment violations arising out of the Sacramento Defendants' purportedly warrantless entry into Haven's home and the subsequent seizure of Haven's firearms.  First, the Sacramento Defendants move to dismiss all three claims against them on various grounds.  Second, the Sacramento Defendants move to sever Haven's claims against them.

A.      Motion to Dismiss

i.      *Defendant Jones*

The Sacramento Defendants move to dismiss Jones as a defendant because Haven's claims against him in his official capacity as Sheriff of Sacramento County are duplicative of Haven's claims against Sacramento County.  The Court agrees.  A claim against a municipal officer in his official capacity is the same thing as a claim against the municipality.  *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985).  "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed."  *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997).  Haven offers no argument opposing Jones's dismissal on these grounds.  Therefore, every claim against Jones in his official capacity is dismissed with prejudice.

ii.      *Defendant Sacramento County*

The Sacramento Defendants move to dismiss Sacramento County as a defendant because Haven fails to allege any official policy under which Sacramento County could be held liable in a § 1983 action.  The Court agrees.  "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, "municipal liability under 42 U.S.C. § 1983 is limited to deprivations of federally protected rights caused by action taken 'pursuant to official municipal policy of some nature.'"  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 471 (1986) (quoting *Monell*, 436 U.S. at 691.)  "[T]here are three ways to show a policy or custom of a municipality: (1) by showing 'a longstanding practice or custom which constitutes the standard operating procedure of the local government entity'; (2)

7

'by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision'; or (3) 'by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.'" *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (quoting *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)).

Haven alleges no official Sacramento County policy in the SAC, but provides in his opposition that "[t]he custom of JONES is to enforce state gun laws, and obviously this is a wide-spread policy."[1] (ECF No. 24 at 2.) "However, 'mere enforcement of a state statute is not a sufficient basis for imposing § 1983 municipal liability.'" *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1133 (C.D. Cal. 2012) (quoting *Wong v. City & Cty. of Honolulu*, 333 F. Supp. 2d 942, 951 (D. Hawaii 2004)). Therefore, because Haven has failed to identify any official policy of Sacramento County under which it could be found liable in a § 1983 action, all claims brought against Sacramento County are dismissed. Moreover, the Court finds that amendment would be futile as Haven's opposition demonstrates that his action lies in challenges to state gun laws and acts carried out by individual officers, rather than in challenges to official policy of Sacramento County. Accordingly, every claim against Sacramento County is dismissed with prejudice.

            *iii.*     *Defendant Brucker*

                  a.     <u>Sixth Cause of Action</u>

Haven alleges that Brucker violated his Second Amendment right because he entered Haven's residence on February 14, 2016, without a warrant and without Haven's consent, and seized three of Haven's firearms, including an AR-7 semi-automatic rifle and a standard issue military semi-automatic 1911. (ECF No. 12 ¶¶ 185–187.) Brucker argues that he seized Haven's firearms pursuant to California law, and thus is entitled to qualified immunity. (ECF No. 15-1 at 11.) Haven does not oppose Brucker's argument that Brucker seized Haven's firearms pursuant to California law and is therefore entitled to qualified immunity. (*See* ECF No. 24 at 3.)

---

[1]     Haven provides no official policy for his Fourth or Fifth Amendment claims against Sacramento County either in the SAC or his opposition.

"Qualified immunity protects government officers 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[W]hen a public official acts in reliance on a duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity." *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999). This rule is not absolute, of course. "Where a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). But, "an officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability." *Id.* at 1210. Because Haven has not opposed Brucker's argument that he was acting pursuant to California law, nor has Haven argued that the law Brucker relied on is patently violative of constitutional principles, the Court finds Brucker is entitled to qualified immunity. However, out of an abundance of caution, the Court will allow Haven leave to amend his Sixth Cause of Action.

b.     Seventh Cause of Action

Haven alleges the same basis for his Fourth Amendment Claim as his Second Amendment claim. (ECF No. 12 ¶¶ 197–99.) Brucker contends the SAC fails to plead factual content sufficient to state a Fourth Amendment claim against him because "[t]he SAC alleges the legal conclusion that Deputy Brucker entered Haven's home without probable cause, but pleads no factual content regarding the search." (ECF No. 15-1 at 11.) The Court finds that Haven's allegations are sufficiently pled. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Haven has pled that Brucker entered his house without a warrant, without consent, and without probable cause. It is unclear how Haven would plead "factual content regarding the search" when he claims he was not home when the search took place. (ECF No. 12 ¶ 198.) Thus, Haven's allegations are sufficient to put Brucker on notice as to Haven's Fourth Amendment claim. To the extent Brucker wishes to argue there were exigent

9

1  circumstances that transformed the seizure into a lawful one, he may do so in his defense.

2                                         c.         Eighth Cause of Action

3        Haven also alleges that the Fifth Amendment guarantees "due process of law" be part of

4  any proceeding that denies a citizen "life, liberty, or property," and claims he was never given a

5  proceeding when his firearms were taken.  (ECF No. 12 ¶ 208.)  Based on Haven's allegations, it

6  appears he is attempting to bring a procedural due process claim.  As an initial matter, the Fifth

7  Amendment due process clause applies only to the federal government, not to state or local

8  governments. *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001).  On this basis alone,

9  the Court finds Haven has failed to state a claim alleging a Fifth Amendment due process

10 violation against the Sacramento Defendants.

11       However, even assuming Haven had properly alleged this cause of action under the

12 Fourteenth Amendment, he has still failed to state a claim upon which relief can be granted.   The

13 Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property,

14 without due process of law."  U.S. Const. amend. XIV, § 1.  In determining whether a plaintiff

15 has alleged a procedural due process claim, a court first "asks whether there exists a liberty or

16 property interest which has been interfered with by the State." *Vasquez v. Rackauckas*, 734 F.3d

17 1025, 1042 (9th Cir. 2013).  If the court finds a deprivation, it must next determine "whether the

18 procedures attendant upon that deprivation were constitutionally sufficient." *Id.*  To determine

19 what procedures are sufficient, courts consider: (1) "the private interest that will be affected by

20 the official action;" (2) "the risk of an erroneous deprivation of such interest through the

21 procedures used, and the probable value, if any, of additional or substitute procedural

22 safeguards;" and (3) "the Government's interest, including the function involved and the fiscal

23 and administrative burdens that the additional or substitute procedural requirement would entail."

24 *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  "[D]ue process is flexible and calls for such

25 procedural protections as the particular situation demands." *Id.* at 334 (1976) (quoting *Morrissey*

26 *v. Brewer*, 408 U.S. 471, 481 (1972)).

27       The Court is simply unable to discern the basis for Haven's procedural due process claim

28 as he has merely provided part of the text of the Fifth Amendment without any explanation as to

1  how it applies to him.  "Threadbare recitals of the elements of a cause of action, supported by

2  mere conclusory statements" are insufficient to state a claim.  *Iqbal*, 556 U.S. at 678.  Haven has

3  not explained what he means by a "proceeding" and has provided no factual basis entitling him to

4  a "proceeding."  Therefore, even under the Fourteenth Amendment, Haven has failed to allege a

5  procedural due process violation.  Ultimately, because the Court finds a Fifth Amendment due

6  process would be futile against local government actors, the Court dismisses Haven's Fifth

7  Amendment due process claim against the Sacramento Defendants with prejudice.

8                                                          **B.**       <u>Motion to Sever</u>

9        A court has broad discretion in determining whether or not to sever claims under Rule 21.

10  *Brunet*, 15 F.3d at 505.  "Claims may be severable under Rule 21 if they arise from different

11  factual situations or pose different legal questions."  *Khanna*, 2007 U.S. Dist. LEXIS 59945, at

12  *2.  "As a general matter, Rule 21 severance creates two discrete, independent actions, which

13  then proceed as separate suits for the purpose of finality and appealability."  *Gaffney*, 451 F.3d at

14  441.  In determining whether to sever a claim under Rule 21, a court may consider the following

15  factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the

16  claims present some common questions of law or fact; (3) whether settlement of the claims or

17  judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were

18  granted; and (5) whether different witnesses and documentary proof are required for the separate

19  claims."  *Leslie*, 2010 U.S. Dist. LEXIS 76826, at *10 (quoting *Morris*, 37 F. Supp. 2d at 580).

20        The Sacramento Defendants argue Haven's claims against them should be severed

21  because they have been misjoined in the instant case.  (ECF No. 15-1 at 15.)  They argue that

22  Haven's claims against them arise out of completely different transactions than both Cupp's

23  claims and Haven's claims against the Placer County defendants.  (ECF No. 15-1 at 15.)  The

24  Sacramento Defendants also argue that the discovery needed for the claims against them is

25  completely different, and trying all the claims together would prejudice the Sacramento County

26  defendants "by creating politicized jury confusion over the nature of Haven's Fourth Amendment

27  claims."  (ECF No. 15-1 at 15.)  Haven argues in response that Haven's claims against the

28  Sacramento Defendants are related to the rest of the lawsuit because Defendant Harris, the

Attorney General, is the common part to both Plaintiffs. (ECF No. 24 at 1–2.) This is nonsensical. Haven's claims against the Sacramento Defendants arise out of completely different events than Plaintiffs' other claims, and they present no common questions of law or fact. In fact, it appears Plaintiffs' SAC in actuality consists of four separate complaints in one, creating confusion for both the Court and defendants alike. Moreover, it is unclear why the Attorney General is even named as a defendant in Plaintiffs' § 1983 claims against various counties and cities. Ultimately, the SAC involves completely different plaintiffs, defendants, events, and jurisdictions, and the Court is unable to discern any reason for these claims being brought together. Accordingly, the Court GRANTS the Sacramento Defendants' Motion to Sever. (ECF No. 15).

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART the Sacramento Defendants' Motion to Dismiss and GRANTS the Sacramento Defendants' Motion to Sever. (ECF No. 15.) Accordingly, the Court hereby:

1.  DISMISSES Defendant Jones in his official capacity with prejudice.

2.  DISMISSES Defendant Sacramento County with prejudice.

3.  DISMISSES the Eighth Cause of Action with prejudice.

4.  DISMISSES the Sixth Cause of Action with leave to amend.

5.  SEVERS the Seventh Cause of Action.

Plaintiff is afforded thirty (30) days from the date of this Order to file a severed and amended complaint for the Sixth and Seventh Causes of Action against Defendant Brucker. The amended complaint will be assigned a new case number, but shall relate back to the original filed complaint in this matter and shall be assigned to the same district judge and magistrate judge. The Clerk of Court is directed to open a new case with the same district judge and magistrate judge and docket this Order in the new case. The Clerk of Court is directed to waive any filing fees associated with the filing of this new complaint, but Plaintiffs are advised that impermissibly joining parties in the future may result in additional filing fees.

///

12

1    IT IS SO ORDERED.

2    Dated: September 20, 2018

3

4    _____
     Troy L. Nunley
5    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28